IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **CARRIE BACHRACH** and **RANDOLPH BACHRACH**, | Civil Case No. 2: 10-CV-00315-PHX-GMK |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| **COVENANT TRANSPORT, INC.,** a Tennessee Company; **ALFRED RICARDO SIMISTER**, | |
| Defendants. | |

Christopher Daniel Strombaugh
Laufenberg Stombaugh & Jassak SC
P. O. Box 722
Platteville, WI  53818

Kenneth H. Levinson
Joseph Lichtenstein & Levinson
221 N LaSalle Street, Suite 2119
Chicago, IL  60601

Page 1 - OPINION AND ORDER

Kevin Koelbel
7303 W Boston Street
Chandler, AZ  85226

Michael Jay Leizerman
EJ Leizerman & Associates LLC
717 Madison Avenue
Toledo, OH  43604

      Attorneys for Plaintiffs


Timothy J. Casey
Schmitt Schenk Smyth Casey & Evens, P.C.
1221 Eas tOsborn Road, Suite 105
Phoenix, AZ  85014-5540

Theodore J. Boutrous, Jr.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197

Joshua S. Lipshutz
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921

      Attorneys for Defendants Covenant Transportation, Inc.
      and Alfred R. Simister


KING, Judge:

Before the court is Defendants' Motion for New Trial or, in the Alternative,

Remittitur [120].


Page 2 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiffs are the parents of decedent Matthew Bachrach, their 31-year-old son who was killed in a motor vehicle accident.  Matthew's wife and three minor children are not parties to this lawsuit.  Prior to trial, the court dismissed plaintiffs' claims for punitive damages and defendants admitted liability.  The court held a two-day jury trial to determine the amount of compensatory damages that should be awarded to plaintiffs for loss of consortium and pain and suffering.  The jury awarded:

|  | Carrie Bachrach | Randolph Bachrach |
|---|---|---|
| For loss of love, affection, companionship, care, protection, and guidance since the death and in the future | $5,000,000 | $2,000,000 |
| For pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced | $2,500,000 | $875,000 |
| For pain, grief, sorrow, anguish, stress, shock, and mental suffering reasonably probable to be experienced in the future | $2,000,000 | $843,000 |
| Total | $9,500,000 | $3,718,000 |

Defendants seek a new trial or a remittitur of these awards.

## LEGAL STANDARDS

In a diversity action tried in federal court, the trial court should apply state law controlling the excessiveness or inadequacy of compensation awards.  Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 419, 116 S. Ct. 2211 (1996).

Remittitur is appropriate  if there is a "lack of evidence to support the damages awarded or a clear indication that the jury misapplied the principles governing damages."  In re Estate of Hanscome, 254 P.3d 397, 402 (Ariz. Ct. App. 2011).

If passion and prejudice tainted the jury's verdict, the court must grant a new trial. Pershing Park Villas v. United Pac. Ins., 219 F.3d 895, 905 (9th Cir. 2000).  "Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict."  Id.  A verdict resulting from passion or prejudice must shock the conscience of the court.  A verdict can be shockingly large or small as the result of something other than passion or prejudice, however.  The size of a verdict in a personal injury action, without more, is not sufficient evidence of passion or prejudice.  Waqui v. Tanner Bros. Contracting Co., Inc., 589 P.2d 1355, 1359 (Ariz. Ct. App. 1979).  The evidence is viewed in the light most favorable to sustaining the verdict.  Mammo v. State, 675 P.2d 1347, 1349 (Ariz. Ct. App. 1983).

## DISCUSSION

Defendants characterize the total $13.2 million award for noneconomic damages as shockingly excessive, outrageous, arbitrary, and irrational.  They claim the award is approximately 100 times larger than the typical Arizona award for parental loss of an adult child. Defendants claim the verdict is so excessive it violates their due process rights even though it is not labeled a punitive damages award.  Defendants also contend a new trial is required because plaintiffs' closing argument sought deterrence and retribution and, in effect, asked for punitive damages without labeling the request as such.  Thus, defendants argue the improper closing argument influenced the jury to act on passion and prejudice, resulting in the excessive verdict.

Although defendants did not object at the time, they claim the arguments constitute plain or fundamental error which must be corrected with a new trial.

According to plaintiffs, Arizona is a forerunner in fully compensating parents for grief and loss of consortium for the wrongful death of an adult child. Plaintiffs claim the jury was not overtaken by passion and prejudice, as demonstrated by the jury awarding less than the amounts sought by plaintiffs and awarding different amounts to the parents based on their different relationships with their son. Plaintiffs deny they asked the jury to return damages more in the nature of punitive damages. They argue defendants took a few comments from their attorneys' closing arguments out of context.

I will first address whether the verdict was the result of passion or prejudice. Defendants rely on remarks made by plaintiffs' counsel in the rebuttal closing argument:

> Last of all, I'll say to you there's one of two outcomes, and only you can decide it. One outcome is in the Covenant's board room in the future, in Covenant's board room they'll look at this case and say: Hey, we always have a corporate defense lawyer who can come in and talk about the peaks and valleys if someone is not as close in a relationship. If they are, we can come in and admit responsibility, we have a way of keeping these verdicts way, way down.
>
> Or you can make this case stand for something so when Covenant says: Oh, yeah, the Bachrach case? That was the case that says we'd better be fair and reasonable to people. We'd better stand up and do the right thing to keep Arizona roads and the drivers fairly and reasonably compensated when we mess up, when we have unsafe drivers on the road.

Tr. of Day Two of Trial at 104, ECF No. 101.

The transcript has a time stamp. This argument took less than one minute out of a total of 1 hour and 24 minutes of closing arguments from all counsel. I agree with defendants that plaintiffs' counsel crossed the line when he referred to the deterrent effect of the verdict. "A

closing argument . . . that the jury could send a message . . . through its verdict is viewed as injecting the issue of punitive damages into a case through the argument, even though such damages had not been pled." Fisher v. McIlroy, 739 S.W.2d 577, 582 (Mo. Ct. App. 1987). Defense counsel did not object, however. More importantly, when this snippet of argument is taken in context of the full closing arguments, its significance would be minor. Due to the minimal nature of the impropriety, I find that the verdict was not the result of passion or prejudice caused by the closing argument.

I now turn to deciding whether the verdict is excessive.

The parties dispute whether the court should look to comparable cases to evaluate the jury award. If the court decides to compare verdicts, plaintiffs ask the court to compare cases from around the country which involve the deaths, for any reason, of both minor and adult children. Defendants contend the proper comparison is with Arizona cases involving the deaths of adult children in motor vehicle accidents.

Defendants searched Arizona records for verdicts from 1999 to 2009 with a jury award to parents for compensatory damages from the death of an adult male child in a motor vehicle accident. Defendants uncovered 19 cases. Only 3 of the 19 verdicts had awards of $1 million or more with the highest of $3 million to a father and mother; 11 of the 19 verdicts had awards of $200,000 or less.

Although plaintiffs do not think verdict comparison is favored by Arizona law, they fight back by providing 19 verdicts from around the country awarding between $2.5 million and $101 million in compensatory damages to a parent for the wrongful death of a child of any age, and

they claim there are 340 published verdicts in excess of $5 million for this type of loss. Plaintiffs

contend that Arizona courts treat the loss of an adult child equally with the loss of a minor child.

I do not read any of the cases cited by plaintiffs to prohibit the court from comparing

verdicts in other cases. Indeed, one of the cases cited by plaintiffs, Rincon v. Rumsey,

No. C20081087 (Ariz. Sup. Ct. Pima Cnty. May 26, 2010), compares verdicts before remitting a

jury award to parents for the wrongful death of their 14-year-old child from $40 million to $12

million. I do acknowledge, however, that situations vary greatly from case to case, making

mechanical comparisons of verdicts unwise.

Courts have considered the age of the plaintiffs in reviewing jury awards in wrongful

death cases. See Hanscome, 254 P.3d at 402 (court reasoned that if the three-year-old plaintiff

could have spent an additional year with his father, who was diagnosed with terminal cancer but

died from negligence at a rehabilitation center, the child would have had the time equivalent to a

large percentage of his life to form memories prior to the father's death). I also see reasons to

consider the age of the decedent because it affects the nature of the parent-child relationship.

Plaintiffs cite Frank v. Superior Court for Maricopa County, 722 P.2d 955, 961 (Ariz.

1986), for its holding that parents have a cause of action for loss of consortium against someone

who severely injures the parents' adult child. They argue that the loss of a child of any age is

devastating to a parent. I would agree. Frank does not hold, however, that the court cannot take

age into account when comparing verdicts. As I said above, verdict comparison is a very rough

process. The age of the child typically affects the quality of the parent-child relationship. Minors

tend to be a bigger part of a parent's day-to-day life because they usually live with one or both

parents and require more care and guidance than most adult children.

Page 7 - OPINION AND ORDER

Additionally, I believe the comparison should be restricted to Arizona cases.  Practically, there are too many verdicts nationwide to review.  Moreover, Arizona is the community of peers from which the court draws the jury pool.

Narrowing down the verdicts plaintiffs provided to those from Arizona which involved the death of an adult child leaves two cases.  The first, Aviles v. Denham, No. CV2000-011675, 2005 WL 2456041 (Ariz. Sup. Ct. Maricopa Cnty. July 19, 2005), concerned a psychiatric patient who was released and then bludgeoned his mother and seven-year-old niece to death.  Plaintiffs were the siblings of the patient (and children of the murdered mother) and the parents of the niece.  Thus, this case does not fit within the parameters I am using.

In the second, Malone v. Moody, No. C-309-703, 2002 WL 34587999 (Ariz. Sup. Ct. Pima Cnty. Nov. 5, 2002), a man intentionally murdered a female decedent who was survived by her spouse and parents.  The man claimed aliens took over his body and committed the murder.  Plaintiffs state that each parent received $10 million in compensatory damages plus punitive damages.  The online summary states that the total award for pain and suffering was $35,000,000 but does not divide the award between the survivors.  In any case, the jury made a very large award.  The manner of death is quite different from a motor vehicle accident and could affect the jury's analysis.  See Girouard v. Skyline Steel, Inc., 158 P.3d 255, 259 (Ariz. Ct. App. 2007) (manner of death is admissible to the extent it is related to the mental anguish the survivors suffered because of the manner of death).  I give this verdict some weight but will keep the differences in mind.

Comparing verdicts which fall within the guidelines I established, the verdict in this case is several times larger than any other case cited by the parties–with the exception of <u>Malone</u>, the murder case.  The issue then becomes whether the evidence supports such a large verdict.

Randolph Bachrach testified that his relationship with Matthew was a work in progress and had its ups and downs.  The last year of Matthew's life, the father and son were in one of the valleys.  Although Randolph invited Matthew to his house during the last year, Matthew made an excuse and did not come.  Randolph cannot recall any face-to-face meetings during the year before that.  They spoke on the phone a few times in the last year.  Matthew had a closer relationship with Carrie Bachrach and saw her a couple of times a month.  Carrie lived close to Matthew and his family.  At times she stayed overnight to either babysit her grandchildren or socialize with the family for an extended evening.

The death of a child is a terrible loss which cannot be compensated completely by money damages.  Carrie and Randolph Bachrach will suffer the loss for the rest of their lives.  After listening to all the testimony, however, I am firmly convinced that the verdict is excessively high.  Although I do not doubt that both parents loved Matthew dearly, still grieve his death, and miss his companionship and love, the verdict is irrationally high when viewed in light of the evidence and compared with similar verdicts.  Neither parent had daily contact with Matthew.  Randolph Bachrach had not seen his son in over a year.  Carrie Bachrach was in closer touch but saw her son only a few times a month.  I conclude that the verdict is excessive, and I grant remittitur to the figures below.  If plaintiffs do not accept the remittitur, I grant a new trial.

|  | Carrie Bachrach | Randolph Bachrach |
|---|---|---|
| For loss of love, affection, companionship, care, protection, and guidance since the death and in the future | $700,000 | $100,000 |
| For pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced | $300,000 | $200,000 |
| For pain, grief, sorrow, anguish, stress, shock, and mental suffering reasonably probable to be experienced in the future | $200,000 | $100,000 |
| Total | $1,200,000 | $400,000 |

**CONCLUSION**

Defendants' Motion for New Trial or, in the Alternative, Remittitur [120] is granted.  The request for remittitur is granted in the amounts stated above.  Plaintiffs have until July 13, 2012 to file a notice with the court accepting the remittitur.  If one or both plaintiffs decline to accept the remittitur, then I will grant a new trial to the plaintiff or plaintiffs declining to accept.

IT IS SO ORDERED.

Dated this _____18th_____ day of June, 2012.

　_/s/ Garr M. King_____
Garr M. King
United States District Judge